IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

DUANE N.,                          )
                                   )
                    Plaintiff,     )
                                   )
          v.                       )          1:23CV84
                                   )
MARTIN J. O'MALLEY,[1]             )
Commissioner of Social Security,   )
                                   )
                    Defendant.     )

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Duane N. ("Plaintiff") brought this action pursuant to Section 205(g) of the

Social Security Act (the "Act"), as amended (42 U.S.C. § 405(g)), to obtain judicial review of a

final decision of the Commissioner of Social Security denying his claim for Disability

Insurance Benefits ("DIB") under Title II of the Act. The parties have filed cross-motions

for judgment, and the administrative record has been certified to the Court for review.

I.     PROCEDURAL HISTORY

Plaintiff protectively filed an application for DIB on April 29, 2020, alleging a disability

onset date of December 1, 2019. (Tr. at 15, 160-62.)[2] Plaintiff's application was denied initially

(Tr. 54-64, 86-89) and upon reconsideration (Tr. at 65-80, 91-98). Thereafter, Plaintiff

---

[1] On December 20, 2023, Martin J. O'Malley was sworn in as Commissioner of Social Security, replacing Acting Commissioner Kilolo Kijakazi. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin J. O'Malley should be substituted for Kilolo Kijakazi as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 405(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Transcript citations refer to the Sealed Administrative Record [Doc. #3].

requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 99-100.) On September 30, 2021, Plaintiff, along with his attorney, attended the subsequent telephonic hearing, at which Plaintiff and an impartial vocational expert testified. (Tr. at 15, 32-53.) Following the hearing, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act (Tr. at 26), and on November 30, 2022, the Appeals Counsel denied Plaintiff's request for review of that decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-6).

II.     LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is

evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

"The Commissioner uses a five-step process to evaluate disability claims." <u>Hancock</u>, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." <u>Id.</u>

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." <u>Bennett v. Sullivan</u>, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." <u>Mastro</u>, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." <u>Id.</u> at 179.[4] Step four then requires the ALJ to assess whether, based on

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." <u>Hines</u>, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." <u>Hall</u>, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (<i>e.g.</i>, pain)." <u>Hines</u>, 453 F.3d at 562-63.

Case 1:23-cv-00084-WO-JEP   Document 15   Filed 02/26/24   Page 4 of 13

that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

## III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since his amended alleged onset date of December 1, 2019. (Tr. at 17.) The ALJ therefore concluded that Plaintiff met his burden at step one of the sequential evaluation process. (Tr. at 17.) At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> carpal tunnel syndrome; chronic headaches; lumbar radiculitis; degenerative disc disease; and status-post cataract and retinal detachment surgeries[.]

(Tr. at 17.) The ALJ found at step three that none of these impairments, individually or in combination, met or equaled a disability listing. (Tr. at 18-20.) Therefore, the ALJ assessed Plaintiff's RFC and determined that, during the time period at issue, he could perform a range of light work, defined as follows:

[Plaintiff could lift] 20 pounds occasionally and 10 pounds frequently; carry[] 20 pounds occasionally and 10 pounds frequently; sit for 6 hours, stand for 6 hours, and walk for 6 hours out of an 8-hour workday; push/pull as much as can lift/carry; no limit in foot controls; can operate hand controls with right hand frequently, and has no limit on the left; occasionally reach overhead to the left, and occasionally reach overhead to the right, and for all other reaching he can reach frequently to the left, and can reach frequently to the right; can handle items frequently with the right hand, no limit on the left; can finger frequently with the right hand, no limit on the left; can feel frequently on the right, no limit on the left; can frequently climb ramps and stairs, never climb ladders, ropes, or scaffolds; balance frequently, stoop frequently, kneel occasionally, crouch occasionally, and crawl occasionally; able to avoid ordinary hazards in the workplace (e.g. boxes on floor, doors ajar, etc.), but would not have right peripheral vision; and can occasionally be exposed to unprotected heights, moving mechanical parts occasionally, and vibration.

(Tr. at 20.) At step four of the analysis, the ALJ found, based on the above RFC and the vocational expert's testimony, that Plaintiff was unable to perform his past relevant work. (Tr. at 25.) However, the ALJ determined that Plaintiff had acquired skills from his past work at step five that were transferrable to other occupations and that given Plaintiff's age, education, work experience, RFC, transferable skills, and the testimony of the vocational expert as to these factors, he could perform other jobs available in significant numbers in the national economy. (Tr. at 25-26.) Therefore, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. at 26.)

Plaintiff now raises three challenges to the ALJ's decision. Specifically, Plaintiff contends that the ALJ (1) "substituted his lay judgment for the opinions of the state agency physicians with respect to [Plaintiff's] complicated visual impairment," (2) "found that [Plaintiff] acquired skills from an occupation he never performed," and (3) "violated the de minimus standard in finding that [Plaintiff's] urological issues and peripheral vascular disease were not severe impairments, contrary to the only medical opinions of record." (Pl.'s Br.

[Doc. #8] at 2-3.) After a thorough review of the record, the Court agrees that Plaintiff's second contention requires remand. In light of this finding, the Court need not address Plaintiff's remaining arguments at this time.

As set out above, at step four of the sequential analysis, the ALJ must determine whether the claimant remains capable of performing any of his past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1560(b). If the Commissioner finds that the claimant cannot perform his past work, the analysis proceeds to the fifth step, and the ALJ bears the burden of producing evidence that the claimant can perform other jobs existing in significant numbers in the national economy. 20 C.F.R. §§ 404.12(b)(3), 404.1520(a)(4)(v), 404.1550(c). When making the step five determination, the ALJ must consider whether the claimant has acquired work skills that can transfer to other jobs. See 20 C.F.R. § 404.1568(d) ("We consider you to have skills that can be used in other jobs when the skilled or semi-skilled work activities you did in past work can be used to meet the requirements of skilled or semi-skilled work activities of other jobs or kinds of work."); see also Social Security Ruling ("SSR") 82-41, 1982 WL 31389, at *2 (Jan. 1, 1982) ("Transferability means applying work skills which a person has demonstrated in vocationally relevant past jobs to meet the requirements of other skilled or semiskilled jobs."). Generally, the ALJ will find skills transferable where the jobs in question (1) require the same or a lesser degree of skill, (2) use the same or similar tools, and/or (3) involve the same or similar products, processes, or services. 20 C.F.R. § 404.1568(d)(2). However, "[t]here are degrees or transferability of skills ranging from very close similarities to remote and incidental similarities among jobs. A complete similarity of all three factors is not necessary for transferability." 20 C.F.R. § 404.1568(d)(3).

Notably, the regulations provide special transferability rules for "persons of advanced age," meaning individuals at least fifty-five years old. Because Plaintiff was 60 years old on his alleged onset date, and therefore "closely approaching retirement age" under the regulations, these rules apply in the present case. In pertinent part, the regulations provide as follows:

> If you are closely approaching retirement age (age 60 or older) and you have a severe impairment(s) that limits you to no more than light work, we will find that you have skills that are transferable to skilled or semiskilled light work only if <u>the light work is so similar to your previous work that you would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry.</u>

20 C.F.R. § 404.1568(d)(4). "Skills, levels of skills and potential occupations to which skills from [past relevant work] may be transferred are for the adjudicator or ALJ to determine (with the assistance, when required, of a [vocational expert] or occupational reference sources)." SSR 82-41, 1982 WL 31389, at *4.

Here, the ALJ determined at step four of the sequential analysis that Plaintiff could not perform his past relevant work. Crucially, the ALJ determined at step four that Plaintiff's past work as the sole worker and owner of a motorcycle repair shop consisted of two positions, that of a motorcycle repairer and a retail store manager. (Tr. at 25.) The ALJ based his finding on the following testimony by the vocational expert:

> Q Is there any prior work you can classify for us in this matter?
>
> A Yes. I have the DOT title of motorcycle repair. . . . The DOT number is 620.281-054. SVP is 4, exertional level is heavy, and it is a semi-skilled position.
>
> Q And is that the extent of the work?
>
> A Yeah.

8

Q  Is -- any skills acquired given his prior work? Now let me before I ask that question. He was also doing -- he was running the store. Does that all come under the motorcycle repair?

A  No. I didn't have that information. So, give me one moment.

Q  Sure.  He testified to it.

A  One moment.

Q  Sure.

A  I do have the DOT title of manager, retail store. DOT number is 185.167-046. This is an SVP 7 with an exertional level of light. And this would be a skilled position.

(Tr. at 46-47.)  The ALJ then proceeded to question the vocational expert regarding acquired skills:

Q  . . . Please describe any skills that the claimant acquired in the two professions that you indicated.

A  One moment. And just to make sure that I'm understanding. Are you asking what type of skills he would have for either one of those positions?

Q  Well, you need both because I'm inquiring as to the transferability of his skill set.

A  Now as far as the manager, retail store position, some of those skills would include buying, selling, renting, demonstrating material, products[,] and services.

Q  What about the other job?

A  One moment please. For the other job this would involve fabricating and selling and repairing objects that have moving parts and mechanically functioning elements. Or any combination of the following, abrading both in schooling, boring, brushing, spraying, chipping, fastening, fitting, folding, flame cutting.

Q  Are any of the skills you described transferrable to other occupations and what exertional level, if so?

9

A  The skills for a motorcycle repair would be considered industry specific. However, the skills of a manager, retail store would be transferrable.

. . .

Q  What about exertional transferability?

A  Exertional level would be light or sedentary.

Q  And do the skills transfer with little if any vocational adjustment in terms of tools, work process, work setting, or industry?

A  Yes.

Q  Are they transferable with little adjustment?

A  Yes.

Q  Okay. So which skills and what occupations with numbers in jobs in each occupation would they transfer to?

(Tr. at 47-48.)  The expert initially provided three jobs in response to the ALJ's query, but she did not identify which, if any, specific skills would transfer.  (Tr. at 48.)  Moreover, the ALJ ultimately relied on just one representative occupation at step five, that of customer service clerk (DOT 299.367-010, 1991 WL 672630).  (Tr. at 25, 48.)

Plaintiff now challenges the ALJ's step five determination, arguing that he never performed the job of retail store manager, and therefore the skill set for that position could not be properly transferred to the job of customer service clerk.   Notably, Plaintiff testified that he owned an ATV and motorcycle repair shop for approximately 20 years, ending in December 2019, and that he did "pretty much everything" associated with the business.  (Tr. at 39.)  This included mechanical repairs, bookkeeping, dealing with customers, and ordering parts.  (Tr. at 39.)  In contrast, the skills identified by the vocational expert for the job of retail store manager consist of "buying, selling, renting, [and] demonstrating material[s], products[,]

10

and services." (Tr. at 47.) Notably, the job description for retail store manager provided in the <u>Dictionary of Occupational Titles</u> depicts a position largely concerned with the supervision of employees, a role that Plaintiff, who worked alone, simply did not perform. <u>See</u> DOT 185.167-046, 1991 WL 671299.

As asserted by Plaintiff in the briefing, he was never a retail store manager, never sold or rented goods, and never demonstrated materials or products. In attempting to reconcile these discrepancies, the Court notes that, upon review of the record, it remains unclear whether the vocational expert based her identification of Plaintiff's past work on Plaintiff's testimony, or whether she simply identified the position of retail store manager based on the ALJ's statement that Plaintiff "was running the store." (Tr. at 47.) As set out above, the expert did not initially identify retail tasks as part of Plaintiff's past relevant work. Only after the ALJ stated that Plaintiff "was running the store" and specifically asked the expert about skills acquired in this role did the expert identify the position of retail store manager. (Tr. at 47.) In doing so, the vocational expert stated that she "didn't [previously] have that information," and, while the ALJ referenced Plaintiff's earlier testimony to that effect, the expert did not have the means to reference that testimony before responding. (Tr. at 47.) Given the dissimilarity between the skills identified by the expert for a retail store manager and those identified by Plaintiff as part of his past work, it instead appears that the expert based her identification of Plaintiff's past work on the ALJ's statement that Plaintiff "was running the store," rather than on any testimony regarding that position. In addition, it appears that the vocational expert did not testify as to what skills Plaintiff actually acquired in his work, and the vocational expert seemed to misunderstand the ALJ's inquiry and instead

testified as to skills that a manager of a retail store would generally have. (Tr. at 47.) Again, this testimony is ambiguous. The ambiguity is further complicated by the fact that the vocational expert did not answer the ALJ's question to identify which skills would transfer to a new occupation. (Tr. at 48.) At the very least, the basis for the vocational expert's testimony remains unclear, and therefore not susceptible to judicial review.[5]

As Plaintiff correctly points out, the accurate identification of Plaintiff's past work skills plays a heightened role in the present case due to Plaintiff's advanced age. As explained above, the similarly of skills sets between past work and occupations identified by the vocational expert increases in relevance for claimants 55 and older. 20 C.F.R. § 404.1568(d)(3), (4). Of particular importance in this case, the Medical-Vocational Guidelines (the Grids), 20 C.F.R. Chapter III, Part 404, Subpart P, Appendix 2, § 202.06, would direct a finding of Disabled if Plaintiff did not acquire transferable skills involving very little, if any, vocational adjustment, and his skills related to motorcycle repair were industry specific and not transferable. (Tr. at 48.) The vocational expert identified the job of customer service clerk as utilizing Plaintiff's transferable skills, but she never identified or discussed any of the skills relevant to that job. (Tr. at 49.) Moreover, the skills the expert identified for the job of retail store manager fail to align with Plaintiff's past work, as described in his testimony. As such, the ALJ lacked substantial evidence for his findings that the skill sets for the two jobs are "so similar" that

---

[5] As noted by Plaintiff, the vocational expert also erred in testifying that Plaintiff has acquired skills that would transfer to unskilled occupations. (Tr. at 49.) The ALJ was thus forced to disregard the unskilled positions identified by the vocational expert.

Plaintiff "would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry." 20 C.F.R. § 404.1568(d)(4).[6]

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding of no disability be REVERSED, and that the matter be REMANDED to the Commissioner under sentence four of 42 U.S.C. § 405(g). To this extent, it is recommended that Defendant's Dispositive Brief [Doc. #12] be DENIED, and Plaintiff's Dispositive Brief [Doc. #8] be GRANTED to the extent set out above.

This, the 26th day of February, 2024.

/s/ Joi Elizabeth Peake
United States Magistrate Judge

---

[6] Given this conclusion, the Court need not reach the other contentions raise by Plaintiff. The Court does note, however, that Plaintiff challenges the ALJ's failure to consider all of the evidence regarding Plaintiff's limitations as a result of his diagnosed prostatitis and enlarged prostate, and after finding Plaintiff's urology issues non-severe, failed to consider those impairments at all in the later sequential evaluation. (Tr. at 18.) Plaintiff also challenges the ALJ's evaluation of his visual limitations, particularly the ALJ's failure to adopt the opinions of the state agency physicians or obtain a consultative evaluation or other medical expert testimony, instead making his own lay evaluation (Tr. at 24, 26.). In light of the need for remand on the issue discussed above, the ALJ on remand can consider all of these matters further as appropriate.